Jonathan A. Stieglitz, Esq. (SBN 278028)
THE LAW OFFICES OF JONATHAN A. STIEGLITZ
11845 Olympic Blvd., Suite 800
Los Angeles, CA 90064
Telephone:  (323) 979-2063
Facsimile:  (323) 488-6748

Attorney for Plaintiff
Beach District Surgery Center

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT COURT OF CALIFORNIA

| | |
|---|---|
| Beach District Surgery Center<br><br>Plaintiff,<br><br>v.<br><br>United Healthcare Services, Inc. and DOES 1-10<br><br>Defendant. | Case No.  2:22-cv-01213-FMO-E<br><br>First Amended Complaint for:<br><br>1.  NEGLIGENT MISREPRESENATION<br><br><br>**(Jury Trial Requested)**<br>**Total Damages - $1,000,000.00** |

Plaintiff Beach District Surgery Center (hereinafter referred to as "Plaintiff" or "Medical Provider") complains and alleges:

## GENERAL ALLEGATIONS

1.      Plaintiff Medical Provider, is and at all relevant times was a medical corporation organized and existing under the laws of the State of California. Plaintiff is and at all relevant times was and is in good standing under the laws of the State of California.

2.      United Healthcare Services, Inc. (hereinafter referred to as "DEFENDANT") is and was licensed to do business in and is and was doing

business in the State of California, as insurers.   PLAINTIFF is informed and believes that DEFENDANT is licensed by the Department of Managed Health Care and/or the Department of Insurance to transact the business of insurance in the State of California.  DEFENDANT is, in fact, transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

3.      The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants DOES 1 through 10, inclusive, are unknown to PLAINTIFF, who therefore sues said defendants by such fictitious names. PLAINTIFF is informed and believes and thereon alleges that each of the defendants designated herein as a DOE is legally responsible in some manner for the events and happenings referred to herein and legally caused injury and damages proximately thereby to PLAINTIFF.  PLAINTIFF will seek leave of this Court to amend this Complaint to insert their true names and capacities in place and instead of the fictitious names when they become known to it.

4.      At all times herein mentioned, unless otherwise indicated, DEFENDANT/s were the agents and/or employees of each of the remaining defendants, and were at all times acting within the purpose and scope of said agency and employment, and each defendant has ratified and approved the acts of his agent.  At all times herein mentioned, DEFENDANT/s had actual or ostensible authority to act on each other's behalf in certifying or authorizing the provision of services; processing and administering the claims and appeals; pricing the claims; approving or denying the claims; directing each other as to whether and/or how to pay claims; issuing remittance advices and explanations of benefits statements; making payments to Plaintiff and its Patients[1].

---

[1] For privacy reasons and in order to comply with Health Insurance Portability and Accountability Act ("HIPAA"), the full names, dates of treatment and policy information pertaining to the Patient is being withheld.  This information will be disclosed to defendants upon their request.

**GENERAL FACTS**

5.     All of the claims asserted in this complaint arise out of DEFENDANT's oral and written communications to Plaintiff and Patients.

6.     Plaintiff is and was informed based on DEFENDANT's oral and written communications that the Patient was insured by DEFENDANT either as subscribers to coverage or dependents of a subscriber to coverage under a policy or certificate of insurance issued and underwritten by DEFENDANT and DOES 1 through 10, inclusive, and each of them.

7.     Plaintiff is and was informed that the Patient entered into a valid insurance agreement with DEFENDANT for the specific purpose of ensuring that they would have access to medically necessary treatments, care, procedures and surgeries by medical practitioners like Plaintiff and ensuring that DEFENDANT would pay for the health care expenses incurred by the Patient.

8.     Plaintiff is and was informed that DEFENDANT and DOES 1 through 10, inclusive, and each of them, received and continue to receive, valuable premium payments from the Patient and/or other consideration from the Patient under the subject policies applicable to the Patient.

9.     Procedures performed by Plaintiff on Patient are not merely for the benefit of Patients, but, rather, for DEFENDANT as well. DEFENDANT receives valuable premium payments from Patient that would cease to be made were Patient unable to receive services from providers of medicine like Plaintiff. Additionally, patient would seek out different insurers if they were unable to obtain the medical services that they desired because of those insurers unwillingness to pay for said medical services.

10.     Plaintiff and the doctors who performed surgeries or procedures upon the Patient were "out-of-network providers" or "non-participating providers" who had no preferred provider contracts or other such standing, written contracts with

Complaint

DEFENDANT setting their rates of pay for services rendered, prior to the date that the surgeries or procedures were performed upon the Patient.

11.     Plaintiff did and does have an agreement with a complementary network called Multiplan.

12.     According to the agreement, Plaintiff is to be paid 93% of its billed charges for any and all services. "Outpatient Service Percentage of Billed Charges Contract Rate. Except as otherwise specified herein, the Contract Rate for Outpatient Services shall be equal to ninety three (93%) percent of Facility's Billed Charges, less any co-payment, Deductible, and/or Co-insurance, if any, specified in the Participant's Benefit Program."

13.     There are instances in which Multiplan or a medical provider will create a list of payors of insurance to exclude from using a Multiplan agreement.

14.     Plaintiff negotiated the Multiplan agreement but as Plaintiff found the terms of the agreement acceptable in all instances, Plaintiff did not ask for the agreement to not apply to certain payors.

15.     Multiplan also never represented that there would be any limitation on the applicability of the agreement.

16.     Multiplan at all times represented to Plaintiff that it should look out for the symbol on patient insurance cards as the symbol would be a representation from a payor of insurance to patients and Plaintiff that the payor of insurance was going to process Plaintiff's medical bill in accordance with the Multiplan agreement.

17.     Multiplan is utilized by a number of insurers including DEFENDANT to help reduce medical costs to patients.

18.     Defendant did and does have an agreement with Multiplan.

19.     Defendant did and does have a longstanding relationship with Multiplan. "UHC is an extraordinary customer and partner of Multiplan. For nearly 30 years, MultiPlan and UHC have worked together to reduce healthcare costs for

Complaint

millions of Americans and their employers, utilizing MultiPlan's unique set of technologies, independent industry-wide information and proprietary network."[2]

20.     There are many examples of insurance cards provided by Defendant that do not have a Multiplan symbol on them. However, in the case where DEFENDANT utilizes the Multiplan Network, Defendant will display an insignia or symbol for Multiplan on the back of DEFENDANT's insurance cards.

21.     When such a symbol is present, a Patient knows that if their medical provider accepts Multiplan the Patient will be receiving care from what amounts to a Network medical provider, Plaintiff knows that they will be getting paid according to the rate they negotiated with the Multiplan Network and DEFENDANT intends that Patient and Plaintiff know that if the Plaintiff accepts Multiplan and does not have another contract with DEFENDANT then DEFENDANT will make payment to Plaintiff according to Plaintiff's Multiplan Agreement.

22.     DEFENDANT and or Multiplan without objection from DEFENDANT have advertised to patients and medical providers throughout the country that when a patient or medical provider sees the symbol for Multiplan on a patient's insurance card the patient and medical provider can be assured that the medical provider's Multiplan agreement will be utilized providing benefits to all parties, patient, medical provider and insurer.

23.     At no time has DEFENDANT ever expressed that it would no longer be utilizing the Multiplan Network in the fashion advertised by Multiplan and or DEFENDANT.

---

[2] Multiplan.us, Multiplan Corporation Releases Stockholder Update, https://www.multiplan.us/multiplan-corporation-releases-stockholder-update/#:~:text=UHC%20is%20an%20extraordinary%20customer,wide%20information%20and%20proprietary%20network.

24.     Medical Provider provided medical facilities for no less than 67 medical procedures for Patient's whose insurance card prominently displayed a Multiplan symbol.

25.     Prior to performing each procedure, each Patient would provide to Medical Provider a copy of Patient's insurance card.

26.     For the claims at issue in this suit, on each insurance card was prominently displayed a symbol for Defendant and a symbol for Multiplan.

27.     By putting the Multiplan symbol on the same insurance card bearing DEFENDANT's symbol, DEFENDANT intended that Medical Provider and each Patient would believe that DEFENDANT utilized the Multiplan network and would make payment utilizing the Multiplan Network.

28.     Plaintiff Medical Provider reviewed each Patient's insurance card and based on the Multiplan symbol found on the insurance card determined to provide medical services to each Patient with the understanding that DEFENDANT would compensate Medical Provider in accordance with Medical Provider's Multiplan Agreement.

29.     Medical Provider then called Defendant to confirm that Defendant utilizes Multiplan to pay for the claims.

30.     For all 67 claims, at no time on any call did Defendant state that it would not be paying for services in accordance with Multiplan.

31.     Medical Provider relied and provided services based solely on DEFENDANT's representation on Patient's insurance card and verifications that Multiplan would be utilized in determining how Medical Provider would be paid.

32.     Following each procedure, Medical Provider submitted to DEFENDANT any and all billing information required by DEFENDANT.

33.     Defendant processed each of Medical Provider's claims but failed to make proper payment in accordance with Plaintiff's Multiplan contract.

34.     Plaintiff then appealed to Defendant to obtain proper payment in accordance with Plaintiff's Multiplan contract.

35.     In many instances Defendant adjusted the amount paid, but in all instances Defendant still refused to make the appropriate payment.

36.     As of the date of this complaint, DEFENDANT has still refused to make the appropriate payment to Medical Provider and Medical Provider is entitled to that payment from DEFENDANT.

## SPECIFIC FACTS[3]

### Example Patient A

37.     On March 19, 2020, Patient A received a surgery at Plaintiff's medical facility.

38.     On March 17, 2020, prior to providing medical services, Plaintiff received a copy of the insurance card specifically provided by Defendant to Patient to be shown to Plaintiff and other medical providers upon seeking medical services.

39.     Prominently displayed on insurance card is and was a symbol for Multiplan.

40.     Defendant's purpose in displaying the symbol was to communicate to Plaintiff and other medical providers that if Plaintiff or the medical provider had an agreement with Multiplan, Defendant would utilize that agreement in processing and paying for the medical services provided to Patient A.

41.     Plaintiff had and has an agreement with Multiplan and so Plaintiff determined to provide medical services to Patient A, trusting Defendant's representation that Plaintiff's Multiplan agreement is the manner in which Defendant pays for the medical services received by Patient A.

---

[3] Plaintiff provides specific facts for five examples which are representative of the 67 claims at issue.

42.   Out of an abundance of caution, on March 17, 2020, Plaintiff also called Defendant to determine the manner in which Defendant pays for medical services provided to Patient A.

43.   Plaintiff's representative V. Collier spoke with Defendant's representative Patricia.

44.   The reference number for the call was 2224.

45.   During the call, Plaintiff asked does Defendant utilize the Multiplan Network?

46.   Defendant responded that it does utilize the Multiplan Network.

47.   During the call, Plaintiff asked what is Defendant's payment responsibilities versus Patient A's responsibilities?

48.   Defendant responded that for in-network medical services the deductible is and was $0.00. The max out of pocket is $3,000 and until the max out of pocket has been met, Patient A has a co-pay of $100.00 for each medical service received. The remainder of what is owed to Plaintiff will be paid by Defendant.

49.   Defendant represented that Patient A had paid nothing and so Patient A would be responsible for the $100.00 co-payment.

50.   All of the information obtained was documented by Plaintiff as part of Plaintiff's office policy and practice.

51.   At no time prior to the provision of services to Patient A by Plaintiff was Plaintiff advised that Patient's policy or certificate of insurance was subject to certain exclusions, limitations or qualifications, which might result in denial of coverage, limitation of payment or any other method of payment unrelated to payment according to Plaintiff's Multiplan agreement.

52.   DEFENDANT did not make reference to any other portion of Patient's plan that would put Plaintiff on notice of the fact that Defendant would not utilize the applicable Multiplan agreement.

53.     Despite representing both on the insurance card and then again on the telephone that the payment method is and was based on Plaintiff's Multiplan agreement, DEFENDANT knew or should have known that it would not be paying Medical Provider based on the Multiplan Agreement.

54.     Plaintiff relied and provided services solely based on the insurance card Defendant provided to Patient to be shown to Plaintiff, as well as Defendant's statements that Multiplan would be used (or the absence of statements that Multiplan would not be used). Plaintiff took DEFENDANT at its word and promises and provided services based solely on those promises and representations.

55.     Plaintiff submitted to DEFENDANT any and all billing information required by DEFENDANT, including a bill for $31,897.44.

56.     Following the procedure, Plaintiff submitted its claims to DEFENDANT accompanied with lengthy operative reports, chart notes, and other medical records.  No matter whether large or small, all of Plaintiff's claims were submitted to DEFENDANT using CPT codes, Healthcare Common Procedure Coding System ("HCPCS"), and modifiers, as necessary. Plaintiff submitted to DEFENDANT any and all billing information and any and all additional information requested by DEFENDANT.

57.     DEFENDANT processed the bill and made a payment of $0.00.

58.     Defendant failed to make payment in accordance with the representations and promises it made to Plaintiff that the manner of payment would be based on Plaintiff's Multiplan Agreement.

59.     As of the date of this complaint, DEFENDANT has still refused to make the appropriate payment to Plaintiff and Plaintiff is entitled to that payment from DEFENDANT.

**Example Patient B**

60.     On August 11, 2020, Patient B received a surgery at Plaintiff's medical facility.

61.    On August 5, 2020, prior to providing medical services, Plaintiff received a copy of the insurance card specifically provided by Defendant to Patient to be shown to Plaintiff and other medical providers upon seeking medical services.

62.    Prominently displayed on insurance card is and was a symbol for Multiplan.

63.    Defendant's purpose in displaying the symbol was to communicate to Plaintiff and other medical providers that if Plaintiff or the medical provider had an agreement with Multiplan, Defendant would utilize that agreement in processing and paying for the medical services provided to Patient B.

64.    Plaintiff had and has an agreement with Multiplan and so Plaintiff determined to provide medical services to Patient B, trusting Defendant's representation that Plaintiff's Multiplan agreement is the manner in which Defendant pays for the medical services received by Patient B.

65.    Out of an abundance of caution, on August 5, 2020, Plaintiff also called Defendant to determine the manner in which Defendant pays for medical services provided to Patient B.

66.    Plaintiff's representative K. Ceja spoke with Defendant's representative Sid.

67.    The reference number for the call was 1638.

68.    During the call, Plaintiff asked does Defendant utilize the Multiplan Network?

69.    Defendant responded that it does utilize the Multiplan Network.

70.    During the call, Plaintiff asked what is Defendant's payment responsibilities versus Patient B's responsibilities?

71.    Defendant responded that for in-network medical services the deductible is and was $3,000.00. The max out of pocket is $5,000 and until the max out of pocket has been met, Patient B would be responsible for 10% of the contracted rate and Defendant would be responsible for 90%. Once Patient B had

met its max out of pocket it, Defendant would be responsible for 100% of the contracted rate.

72.     Defendant represented that Patient had already paid $3,000.

73.     All of the information obtained was documented by Plaintiff as part of Plaintiff's office policy and practice.

74.     At no time prior to the provision of services to Patient B by Plaintiff was Plaintiff advised that Patient's policy or certificate of insurance was subject to certain exclusions, limitations or qualifications, which might result in denial of coverage, limitation of payment or any other method of payment unrelated to payment according to Plaintiff's Multiplan agreement.

75.     DEFENDANT did not make reference to any other portion of Patient B's plan that would put Plaintiff on notice of the fact that Defendant would not utilize the applicable Multiplan agreement.

76.     Despite representing both on the insurance card and then again on the telephone that the payment method is and was based on Plaintiff's Multiplan agreement, DEFENDANT knew or should have known that it would not be paying Medical Provider based on the Multiplan Agreement.

77.     Plaintiff relied and provided services solely based on the insurance card Defendant provided to Patient to be shown to Plaintiff, as well as Defendant's statements that Multiplan would be used (or the absence of statements that Multiplan would not be used). Plaintiff took DEFENDANT at its word and promises and provided services based solely on those promises and representations.

78.     Plaintiff submitted to DEFENDANT any and all billing information required by DEFENDANT, including a bill for $10,200.00.

79.     Following the procedure, Plaintiff submitted its claims to DEFENDANT accompanied with lengthy operative reports, chart notes, and other medical records.  No matter whether large or small, all of Plaintiff's claims were submitted to DEFENDANT using CPT codes, Healthcare Common Procedure

Coding System ("HCPCS"), and modifiers, as necessary. Plaintiff submitted to DEFENDANT any and all billing information and any and all additional information requested by DEFENDANT.

80.     DEFENDANT processed the bill and made a payment of $482.45.

81.     Defendant failed to make payment in accordance with the representations and promises it made to Plaintiff that the manner of payment would be based on Plaintiff's Multiplan Agreement.

82.     As of the date of this complaint, DEFENDANT has still refused to make the appropriate payment to Plaintiff and Plaintiff is entitled to that payment from DEFENDANT.

**Example Patient C**

83.     On May 1, 2020, Patient A received a surgery at Plaintiff's medical facility.

84.     On April 29, 2020, prior to providing medical services, Plaintiff received a copy of the insurance card specifically provided by Defendant to Patient to be shown to Plaintiff and other medical providers upon seeking medical services.

85.     Prominently displayed on insurance card is and was a symbol for Multiplan.

86.     Defendant's purpose in displaying the symbol was to communicate to Plaintiff and other medical providers that if Plaintiff or the medical provider had an agreement with Multiplan, Defendant would utilize that agreement in processing and paying for the medical services provided to Patient C.

87.     Plaintiff had and has an agreement with Multiplan and so Plaintiff determined to provide medical services to Patient C, trusting Defendant's representation that Plaintiff's Multiplan agreement is the manner in which Defendant pays for the medical services received by Patient C.

88.     Out of an abundance of caution, on April 29, 2020, Plaintiff also called Defendant to determine the manner in which Defendant pays for medical services provided to Patient C.

89.     Plaintiff's representative K. Ceja spoke with Defendant's representative Patricia.

90.     The reference number for the call was 2224.

91.     During the call, Plaintiff asked does Defendant utilize the Multiplan Network?

92.     Defendant responded that it does utilize the Multiplan Network.

93.     During the call, Plaintiff asked what is Defendant's payment responsibilities versus Patient C's responsibilities?

94.     Defendant responded that for in-network medical services the deductible is and was $0.00. The max out of pocket is $3,000 and until the max out of pocket has been met, Patient A has a co-pay of $100.00 for each medical service received. The remainder of what is owed to Plaintiff will be paid by Defendant.

95.     All of the information obtained was documented by Plaintiff as part of Plaintiff's office policy and practice.

96.     At no time prior to the provision of services to Patient C by Plaintiff was Plaintiff advised that Patient's policy or certificate of insurance was subject to certain exclusions, limitations or qualifications, which might result in denial of coverage, limitation of payment or any other method of payment unrelated to payment according to Plaintiff's Multiplan agreement.

97.     DEFENDANT did not make reference to any other portion of Patient's plan that would put Plaintiff on notice of the fact that Defendant would not utilize the applicable Multiplan agreement.

98.     Despite representing both on the insurance card and then again on the telephone that the payment method is and was based on Plaintiff's Multiplan

agreement, DEFENDANT knew or should have known that it would not be paying Medical Provider based on the Multiplan Agreement.

99.    Plaintiff relied and provided services solely based on the insurance card Defendant provided to Patient to be shown to Plaintiff, as well as Defendant's statements that Multiplan would be used (or the absence of statements that Multiplan would not be used). Plaintiff took DEFENDANT at its word and promises and provided services based solely on those promises and representations.

100.   Plaintiff submitted to DEFENDANT any and all billing information required by DEFENDANT, including a bill for $15,300.00.

101.   Following the procedure, Plaintiff submitted its claims to DEFENDANT accompanied with lengthy operative reports, chart notes, and other medical records.  No matter whether large or small, all of Plaintiff's claims were submitted to DEFENDANT using CPT codes, Healthcare Common Procedure Coding System ("HCPCS"), and modifiers, as necessary. Plaintiff submitted to DEFENDANT any and all billing information and any and all additional information requested by DEFENDANT.

102.   DEFENDANT processed the bill and made a payment of $108.40.

103.   Defendant failed to make payment in accordance with the representations and promises it made to Plaintiff that the manner of payment would be based on Plaintiff's Multiplan Agreement.

104.   As of the date of this complaint, DEFENDANT has still refused to make the appropriate payment to Plaintiff and Plaintiff is entitled to that payment from DEFENDANT.

## FIRST CAUSE OF ACTION:
## FOR NEGLIGENT MISREPRESENTATION

105.   Plaintiff incorporates by reference all previous paragraphs as though fully set forth herein.

106.   DEFENDANT provided Patient with an insurance card with clearly displayed a Multiplan insignia.

107.   DEFENDANT represented through this insignia and emblem which DEFENDANT intentionally chose to put on its insurance card that DEFENDANT would utilize the Multiplan Network.

108.   DEFENDANT placed the insignia and emblem on an obvious portion of the insurance card so that both Patient and Medical Provider would see the emblem and know that Multiplan would be utilized in the payment of any bill submitted by Medical Provider.

109.   Despite the clear intent put forth by DEFENDANT by displaying the Mutliplan insignia and emblem, DEFENDANT did not pay Plaintiff in accordance with Plaintiff's Multiplan Agreement.

110.   DEFENDANT knew or could have been reasonably sure that it was never going to pay Medical Provider appropriately under Medical Provider's Multiplan agreement, despite the clear intent shown by DEFENDANT in displaying the insignia and emblem on each Patient/DEFENDANT's insurance card.

111.   Medical Provider justifiably relied on DEFENDANT's placement of a Multiplan emblem as a statement that DEFENDANT would be paying Medical Provider's bill pursuant to Medical Provider's Multiplan agreement as that is the common practice of insurers like DEFENDANT in the industry when displaying a Multiplan emblem or insignia on their insurance card.

112.   Medical Provider has been damaged in being paid far less than the 93% of billed charges owed to Medical Provider under Medical Provider's Multiplan agreement.

113.   In light of DEFENDANT's misrepresentation as to the use of a Multiplan agreement in paying for medical bills and of Medical Provider's reliance thereon DEFENDANT was obligated to Medical Provider at 93% of Medical

Provider's billed charges with interest pursuant to Medical Provider's Multiplan agreement.  An amount no less than $1,000,000 but the total amount to be determined at the time of trial.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Complaint

/ / /

## **PRAYER FOR RELIEF**

**WHEREFORE,** Beach District Surgery Center prays for judgment against defendants as follows:

1.      For compensatory damages in an amount to be determined, plus statutory interest but no less than $1,000,000;

2.      For restitution in an amount to be determined, plus statutory interest;

3.      For a declaration that DEFENDANT is obligated to pay plaintiff all monies owed for services rendered to each Patient

4.      For punitive damages; and

5.      For such other relief as the Court deems just and appropriate

.

Dated: May 20, 2022                LAW OFFICES OF JONATHAN A. STIEGLITZ

By: /s/Jonathan Stieglitz
    JONATHAN A. STIEGLITZ
    Attorneys for Plaintiff, Beach District
    Surgery Center

## **DEMAND FOR JURY TRIAL**

Plaintiff, Beach District Surgery Center hereby demands a jury trial as provided by law.

Dated: May 20, 2022                LAW OFFICES OF JONATHAN A. STIEGLITZ

By: /s/Jonathan Stieglitz
    JONATHAN A. STIEGLITZ
    Attorneys for Plaintiff, Beach District
    Surgery Center

Complaint